No. 27,279.

ADA HUPP, *Appellant*, v. FRANK HARDISTY and MYRTLE HARDISTY, *Appellees.*

### SYLLABUS BY THE COURT.

DEATH — *Persons Liable — Judgment Notwithstanding General Verdict.* In a civil action for damages brought by the widow of a murdered man against the murderer and his wife, a judgment in favor of the wife notwithstanding a verdict against both defendants is held to have been justified by the special findings, particularly one to the effect that what she did that led to the killing of the plaintiff's husband was to seat herself upon a rock with the purpose of preventing the removal of the culvert of which it was a part, by a grading crew, a member of which was the victim of the murder.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed April 9, 1927. Affirmed.

*Dennis Madden* and *C. B. Randall,* both of Topeka, for the appellant.

*A. E. Crane, B. F. Messick, A. H. Crane,* all of Topeka, *A. B. Crum,* of Lyndon, *Edward T. Riling* and *John J. Riling,* both of Lawrence, for appellee Myrtle Hardisty.

The opinion of the court was delivered by

MASON, J.: Frank Hardisty shot and killed Henry Hupp. Hupp's widow brought this action against Hardisty and his wife, charging that the killing was murder in the first degree on his part, and that his wife aided and abetted him therein. A verdict was returned against both defendants for $10,000, but upon the special findings judgment was rendered in favor of Mrs. Hardisty, from which the plaintiff appeals.

A statement of the circumstances of the homicide may be found in the opinion on the affirmance of the appeal of Hardisty from a conviction on the charge of murder (*State v. Hardisty,* 121 Kan. 576, 249 Pac. 617), although the records in the two cases are not connected, the testimony in the criminal case not having been admitted in the civil action. Briefly, it may be said Hupp was a member of a county road-grading crew who on the day before the homicide were at work grading by machinery a road passing Hardisty's farm, at entrances to which he had made driveways or culverts of rocks to enable him to drive in and out. A controversy

Criminal Law, 16 C. J. p. 128 n. 70. Death, 17 C. J. pp. 1229 n. 14, 1317 n. 1. Judgments, 33 C. J. p. 1187 n. 71. Trial, 38 Cyc. pp. 1927 n. 83, 1978 n. 44, 1986 n. 82.

arose over the efforts of the graders to remove these rocks, which was renewed the next day, and in the course of which the killing occurred.  This is a meager statement, but is regarded as sufficient for the present purpose of showing the bearing of the special findings, which were as follow, several being omitted as not having relation to the conduct or responsibility of Mrs. Hardisty.

"1. Did the defendants conspire and agree together to prevent the road graders from removing the rock driveway in the public road, and employ any force necessary to that end?  A. Yes.

"2. Was the defendant Myrtle Hardisty present, aiding and abetting her husband at the time of the killing of Henry Hupp in preventing the road graders from removing the rock driveway?  A. Yes.

"3. Was the killing of the deceased, Henry Hupp, the result of the conspiracy between the defendants?  A. Yes.

"4. Did Myrtle Hardisty counsel, aid or abet Frank Hardisty in the shooting of Henry Hupp?  A. No.

"10. Did Myrtle Hardisty say or do anything which led to the killing of Henry Hupp?  A. Yes.

"11. Did Frank Hardisty tell Henry Hupp that if he would drive around the crossing it would be all right?  A. Yes.

"12. Does the evidence in this case show that Frank Hardisty had any intention of killing Henry Hupp at the time he went to the crossing?  A. No.

"13. Did Frank Hardisty shoot Henry Hupp in the heat of passion in a sudden quarrel between them?  A. No.

"14. If you answer question No. 10 Yes, then state what she said or did. A. She aided in starting the trouble by placing herself on the rock and thereby stopping the road grader."

The findings numbered 3 and 10 are not merely consistent with the general verdict, but tend to give it affirmative support.  They are general in their terms, however, are essentially conclusions, and must yield if inconsistent with any specific and concrete fact found elsewhere.  The question numbered 14 expressly called for the specific facts upon which finding 3 was based, and by clear implication made the same request with regard to finding 10.  The jury gave a candid answer, which in effect explained what was meant by the other two findings.  It showed that the general verdict so far as Mrs. Hardisty was concerned was based upon her having placed herself on the rock, thereby stopping the grader and starting the trouble. We agree with the trial court that this conduct on her part was not enough to make her liable.

The submission to the jury of question number 1 suggests a reliance by the plaintiff upon the theory that the resistance by the defendants of the removal of the culverts was itself a crime, and that

Mrs. Hardisty by coöperating with her husband therein rendered herself liable for every criminal act done by him in pursuance of the common purpose, or as a natural or probable consequence thereof. (16 C. J. 128.) We know of no statute making the resistance of the members of a grading crew in the performance of their official duty a public offense in and of itself. Nor do we regard murder or manslaughter as such a natural consequence of Mrs. Hardisty's seating herself on the rock in the hope of thereby inducing the graders to desist from their purpose as to render her liable on that account.

The judgment is affirmed.

HOPKINS, J., dissenting.